## J. McCLENDON v. KEMP, Sheriff.

A submission is a covenant by which persons who have a lawsuit or difference with one another, name arbitrators to decide the matter, and bind themselves, reciprocally, to perform what shall be arbitrated.

A submission must be reduced to writing.

So long as the Sheriff's sale of the property is not set aside by a judgment of the Court in a direct action, he may invoke that title against the seizure of it by the defendants in injunction.

APPEAL from the Fourth District Court of New Orleans, *Price, J. Dugué & Dreux and Russell*, for plaintiff.

*D. N. Hennen, for defendant.*—Plaintiff enjoins seizure by Sheriff against a third party, on the ground that he, plaintiff, is the owner of the property. He sets forth that title. Defendant answers, and alleges nullity of plaintiff's title, and prays judgment decreeing its nullity.

A jury is sworn to try the issues joined, and the points as they present themselves are these :

1. Is it the Sheriff's return or his deed that is the proper evidence of his acts under the writ ?

2. Can the Sheriff make seizure after expiration of his writ, under a copy of the original retained, under the acts 1855 ?

3. Must not a sale at twelve months' credit, "for what it will bring," be for a serious price, or one having a proportion to the value of the property ?

For the validity of a Sheriff's sale it is essential to show a Judge's writ and return. 9 A. 271, *Curl* v. *Miles.*

It was attempted to show a return by Mr. Childress' testimony. But it does not appear what that return is, whether the property was seized before the expiration of the writ, etc., etc. On the contrary, it appears by his testimony, that the Sheriff kept a copy for the "purpose of completing the seizure."

The Supreme Court say (13 A. 451, *Hyman* v. *Bailey*), that the Sheriff's deed is not " of itself a title translative of property." We must look to the return to know what was done under the execution. 8 A. 138, *Dede* v. *Boguille; Davis* v. *Wilingen*, 5 A. 584.

If the Sheriff retained a copy of the writ of fi. fa., which expired in September, 1855, non constat by any evidence as to contents of the last return, that the seizure was made under the original writ : if made under the copy it was illegal. 14 A. 65, *Fulson* v. *Anderson.*

But the testimony of Childress shows that the Sheriff retained a copy for the purpose of making a seizure ; the writ then being expired, the Sheriff was without authority to make any seizure (14 A. 65), and the adjudication to McClendon is a nullity. The act of 1855, p. 253, did not authorize more to be done under a copy than could be done under the original; under the original writ the seizure after return day was a nullity, ergo, under the copy equally so.

At the time the Sheriff made the sale, November, 1855, he had no authority to make the sale, for according to Childress' testimony the seizure had not been made before the expiration of the return day, but was made, consequently, under the copy which he (the Sheriff) retained, for the purpose of making the seizure.

It is clear, if the Sheriff had no authority, he could make no title ; that he had none is clear from the authority cited. (14 A. 65).

What a Sheriff does when he has a writ (authority) in his hands may be presumed to be legally done ; but his authority or writ cannot be presumed. 5 Little (Kentucky) Reports, 19 *Budd* v. *Johnson*.

If it be insisted that the recitals in the Sheriff's deed shall supply the return to the writ, then it appears from that deed (pp. 8, 12) that the property on the sale at twelve months' credit was not advertised properly. It should have been stated that the bond would bear interest. See 10

Rob. p. 31, *Wright* v. *Higginbotham;* and the irregularity preceding the sale affects it with the vice of nullity.

Further, it does not appear that the seizure and sale was made on a copy of writ retained under act of 1855, by any recitals in the deed; the contrary appears.

The adjudication to McClendon has a radical defect. As a sale, it is defective in that which constitutes the essence of the contract, to wit, a price. It is true that at this second adjudication the property must be sold for "whatever it will bring;" (C. P. 682); but still it must "bring" a price ; if not, it is obvious there is no sale. Now there is no price unless there be a serious price ; that is, a sum bearing some proportion to its value; not an infinitesimally small price, that it could never enter into the mind of either the seller to receive or the buyer to give. In such cases they do not seem to consent. C. C. 2439. See Pothier, vente § 19. *Wood* v. *Hennen*, 9 A. 264.

There are several kinds of price : the "juste prix," and the "vil prix," and one so low as to give rise to lesion, but still there is a price; a third category is one where the price is purely illusory. There is, morally, no price, no proportion to the value.

The case in question. It is true, there is no lesion in judicial sales; (C. C. 1863), but lesion is founded on the hypothesis that there is a price, although that price be a "vil prix." Our argument is, there is no price.

Farther, gross inadequacy of price avoids a sale, and is evidence of fraud. 5 Porters (Ind.) Reports, p. 213 and authorities there quoted. And our bill of exceptions (p. 36) is well taken to the refusal of the Judge to so instruct the jury. See also 3 A. 536, *Ross* v. *Ross*.

This case evidently comes within the provisions of Art. 21 of Civil Code, authorizing the Judge to decide according to equity when there is no precise law. It would seem to be most inequitable for the plaintiff, under the circumstances of this case, where property admitted at time of the sale to be worth $10 an acre or $5,990, is sold at twelve months' for $50.

No direct action is necessary to annul that which has no legal existence; but if it were, the issue was made and tendered by the defendant's answer. Under our practice, no application being permitted, plaintiffs are supposed to join issue on the matters set up in the answer. (Hennen's Digest, p. 1173 § 10).

To obviate this consequence, plaintiff have excepted to the matters set up in the answer of the nature of a reconventional demand, and not have allowed the jury to be sworn to try the issues that had been joined between the parties. See 14 A. 390, *Sharp* v. *Bright*.

ILSLEY, J. This is an injunction suit by way of third opposition.

The plaintiff claims to be the owner of certain lands described in his petition, purchased by him at a sheriff's sale, made on the third day of November, 1855, under and by virtue of a writ of fi. fa., issued from the

Fifth District Court of New Orleans, in the suit of *Hugh McDooling* v. *The New Orleans and Nashville Railroad Company.*

He further represents that, notwithstanding his ownership of the said property, the said Hugh McDooling, the plaintiff in said suit, has illegally and wrongfully caused a pretended writ of fi. fa. to be issued from the said Fifth District Court of New Orleans, in the said suit, against the said New Orleans and Nashville Railroad Company, directed to the Sheriff of the Parish of St. Helena, who, in pursuance thereof, has wrongfully and illegally seized upon, and offered for sale, and will sell on the 3d day of May, 1856, the said lands belonging to the said petitioner, to his great loss and injury, unless restrained by injunction.

He claims three hundred dollars damages for the wrongful and illegal seizure of his said property.

A mandate of injunction was granted, as prayed for.

Previous to the filing of his answer, the defendant filed an exception, to the effect that the matters in controversy in this suit were submitted for decision by the plaintiff, J. McClendon, and by the consent of the defendant to Alfred Hennen, who, after taking the same into consideration, decided the same against the plaintiff and in favor of the defendant, as appears by the written statement, on record, of Penn & Martin, the counsel for the plaintiff; and these defendants pleaded the said judgment and decree of the said Alfred Hennen, in favor of the defendant, as a peremptory execution, and pray for the dismissal of the plaintiff's action, which exception was properly overruled, because the alleged agreement to submit was not in writing, as is required by Arts. 3066, 3067 La. Code. *N. Raguet* v. *Carmouche*, 3 A. 133.

The defendants then filed their answer, pleading the general issue, and averring that the plaintiff has no just and legal title to the property claimed; that the titles set forth by the plaintiff are illegal, and that the same were obtained by fraud. They subsequently filed, by leave of Court, an amended answer, specifying thereby the irregularities, defects, illegalities and frauds pleaded in the original answer, and say that the Sheriff had no legal fi. fa. in his hands when he made the seizure and sale of the lands in controversy, and was without authority to sell, as the writ of fi. fa., originally void, illegal and informal, had expired, and was of no avail to make the sale; that the said Sheriff never gave any notice of demand of payment of the defendant on the writ of fi. fa., nor any notice of seizure of any property, nor required any property to be pointed out to him for seizure; nor did he ever make any legal and valid seizure of the tracts of land; nor did he ever give notice to appoint appraisers of the property seized; nor was the same ever legally appraised; nor were any legal, correct, descriptive advertisement of the property made and posted up, as required by law; and the said illegal sale was made without a compliance of any of the legal formalities, etc.

They further represent that the said property was illegally offered for sale, because there was no bidders at the time and place of selling the

same, and there could be no sale for want of bidders; and further, that the property was worth ten thousand dollars, and that the pretended bid of the plaintiff of twenty-five dollars was no bid at all, as it was not proportionate to the value of the property; that there was a combination with others, by the plaintiff, to obtain the said land for a mere nominal bid; and the sale of the same was not legal, fair and upright, and the same is against good conscience and equity, and that the whole proceedings are null and void.

A motion was made by the plaintiff to strike out that portion of the defendant's answer seeking to attack, collaterally, the alleged nullities of the sale by the Sheriff to the plaintiff, upon the ground that the said nullities, if any exist, are relative, and cannot be attacked without making all the parties to the said transaction parties to the suit.

That it is only by a direct action of nullity that said irregularities can be inquired into. The Court overruled the motion and decided that it would more properly come up whenever the defendant should offer testimony in support of the averments in his answer; and, subsequently, when evidence was so offered, it was objected to by the plaintiff, but was received by the Court. The plaintiff's bill of exceptions to the ruling of the Court is found in the record.

Before submitting the case to the jury, the plaintiff requested the Court to charge it, and the defendant asked that the charge be reduced to writing; whereupon the Judge charged:

1. That the only question for the consideration of the jury was whether or not the plaintiff was the owner of the property seized at the time of such seizure; and that, if they believed, from the evidence, that he was the owner of the same property, at the date of the seizure, then they should find for the plaintiff.

2. That the Sheriff in making the sale was presumed to have done his duty; if the jury believed, from the evidence, that he was acting under a fi. fa., legally issued, or a certified copy of the same; and that the jury are not to infer fraud or collusion from the fact that the price bid at the second offering of the property bore no proportion to the real value of the property sold.

3. That the Act No. 199, approved March 15, 1855, is not repealed by the Act No. 337, approved March 16, 1855; but they must be construed together, so that no clause, sentence or word in them be superfluous, void or insignificant.

4. That the sale to the plaintiff by the Sheriff could not be attacked collaterally, unless the jury believed from the evidence that the same was fraudulent and simulated.

5. That the declarations of the Sheriff, in his deed of sale to the plaintiff, are to be regarded as true, unless rebutted by counter-evidence.

A bill of exceptions, taken by the defendant to this charge, is also found in the record; but, in this Court, the only part of the charge objected to was that in paragraph two: to the effect that the jury were

not to infer fraud or collusion from the fact that the price bid at the second offering of the property bore no proportion to the real value of the property sold.

The charge objected to was evidently correct, although, if no fraud or simulation appeared in the sale to the plaintiff, it was unnecessary to enquire into any ground of nullity. It was simply incumbent on the plaintiff to adduce, as we think he has done, sufficient legal evidence to raise, in regard to the sale to him, the presumption omina rect acta; and this we think he has done, so far, at least, as to protect him from a direct seizure of the property in his hands, by the same plaintiff, in the the identical suit, in and under which his title was derived. So long as the Sheriff's sale of the property is not set aside by a judgment of the Court, in a direct action, he may invoke that title against the seizure of it by the defendants in injunction. *Lawrence* v. *Birdsall*, 6 A. 688.

We find no error in the judgment of the Court which reserves to the defendant any right he may have to claim the nullity of the sale in a direct action, and it is therefore unnecessary to pass upon the bills of exception filed in the suit.

It it is therefore ordered, adjudged and decreed, that the verdict of the jury and the judgment of the Court below be affirmed; the costs of appeal to be paid by the appellant.